UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

---

| | |
|---|---|
| IN RE PRADAXA ) | MDL No. 2385 |
| (DABIGATRAN ETEXILATE) ) | 3:12-md-02385-DRH-SCW |
| PRODUCTS LIABILITY ) | Judge David R. Herndon |
| LITIGATION ) | |

---

**This Document Relates to:**

THELMA BUTNER, CLIFTON
FITZSIMMONS, JOHN WILCHINSKI,
GEORGE FLETCHER, and PAULINE
ALDRIDGE,

      Plaintiffs,

      vs.

BOEHRINGER INGELHEIM
PHARMACEUTICALS, INC.,
BOEHRINGER INGELHEIM
FREMONT, INC., BOEHRINGER
INGELHEIM PHARMA GmbH & CO.
KG, BOEHRINGER INGELHEIM
INTERNATIONAL GmbH,
BIDACHEM S.P.A., MCKESSON
CORPORATION and DOES 1-100

      Defendants.

Case No. 3:12-cv-60092-DRH-SCW

**ORDER DISMISSING FRAUDULENTLY JOINED DEFENDANTS
AND DENYING REMAND**

**Herndon, Chief Judge:**

## I.  INTRODUCTION

      One of the defendants, Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI"), removed this action to federal court on the basis of diversity jurisdiction (Doc. 1).

1

BIPI contends complete diversity exists because the two nondiverse defendants, Boehringer Ingelheim Fremont, Inc. ("BIF") and McKesson Corporation ("McKesson"), were fraudulently joined. Presently, before the Court is the plaintiffs' motion to remand to state court (Doc. 14). The plaintiffs allege various procedural defects in BIPI's notice of removal and contend they have asserted viable claims against the two nondiverse defendants. *Id.* BIPI filed a responsive pleading on January 2, 2013 (Doc. 27). Thereafter, on January 17, 2013, the plaintiffs filed a reply brief (Doc. 28).[1]

## II.  BACKGROUND

The plaintiffs are citizens of California, Tennessee, and Louisiana (Doc. 1 ¶¶ 17-21). On May 23, 2012, the plaintiffs filed a complaint in the Superior Court of the State of California for the County of San Francisco (Doc. 1-1). The plaintiffs' complaint asserts twelve causes of action arising from the alleged ingestion of the prescription drug Pradaxa and names six defendants (Doc. 1-1).[2] McKesson and BIF are both citizens of California and are the only non-diverse defendants.

---

[1] The plaintiffs' reply brief, if any, was due on January 16, 2013 (Doc. 26). On January 17, 2013, the plaintiffs' simultaneously filed a reply brief (Doc. 28) and a motion for extension of time to file (Doc. 29) stating counsel mistakenly believed the reply was due on January 17, 2013. Although the Court has considered the plaintiffs' reply brief, the Court notes it could have stricken the briefing for timeliness and for failure to comply with Local Rule 83.1(f) (the filing attorney did not file a written entry of appearance until February 19, 2013 and only did so after being contacted by the Court, out of courtesy, on two separate occasions). The Court also reminds the plaintiffs that reply briefs are not favored and should be filed only in exceptional circumstances. S.D. Ill. Local Rule 7.1(c). The plaintiffs' reply brief does not state whether exceptional circumstances are present as required under Local Rule 7.1(c). *Id.* The Court may not be so lenient in the future.

[2] The named defendants are Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI") (a citizen of the States of Delaware and Connecticut), Boehringer Ingelheim Fremont, Inc. (a citizen of the States of Delaware and California), Boehringer Ingelheim Pharma GmbH & Co. KG. (a citizen of the foreign state of Germany), Boehringer Ingelheim International GmbH (a citizen of the foreign state of

On July 16, 2012, after the plaintiffs' complaint was filed in state court but prior to service of process on any defendant, BIPI removed the case to the U.S. District Court for the Northern District of California on the basis of diversity jurisdiction (Doc. 1).[3] In removing the action, BIPI did not obtain the consent of the other named defendants. BIPI's notice of removal states that BIPI did not need to obtain the consent of the other named defendants because, at the time of removal, no defendant had been served (Doc. 1 ¶ 7). In addition, BIPI's notice of removal states it was not required to obtain the consent of BIF or McKesson because both defendants were fraudulently joined. *Id.*

On December 7, 2012, the case was transferred from the Northern District of California to this Multidistrict Litigation pursuant to 28 U.S.C. § 1407. Presently before the Court is the plaintiffs' motion to remand to state court (Doc. 14). The plaintiffs raise several procedural objections regarding BIPI's notice of removal, including the following: (1) the removal is premature because it was filed prior to service on any defendant; (2) the removal is improper because BIPI did not obtain the consent of the other defendants; and (3) the removal violates the fraudulent joinder rule.  The plaintiffs also contend that this Court lacks subject matter jurisdiction because they have asserted viable claims against the nondiverse defendants.

---

Germany), Bidachem S.P.A. (a citizen of the foreign state of Italy), McKesson Corporation (a citizen of the States of Delaware and California), and Does 1-100 (Doc. 1 ¶¶ 22-27).

[3]  In their motion to remand, the plaintiffs erroneously assert this case was removed by defendants Boehringer Ingelhei Pharmaceuticals, Inc., Boehringer Ingelheim Fremont, Inc., Boehringer Ingelheim Pharma GMBH & Co. KG, Boehringer Ingelheim Pharma GMBH & Co. KG, Boehringer Ingelheim International GMBH, and Bidachem S.P.A. (Doc. 14 p. 1). The notice of removal, however, was filed by BIPI alone (Doc. 1).

### III. ANALYSIS

A. Governing Authority

    1. Substantive State Law

In assessing whether a defendant has been fraudulently joined, a court considers whether the asserted claims have any chance of success under state substantive law. Accordingly, prior to conducting a fraudulent joinder analysis, a court must determine which state's substantive law is applicable. When a diversity case is transferred by the Multidistrict Litigation Panel (as is the case here), the transferee court applies the state laws that the transferor forum would have applied according to that forum's conflict of laws rules. *See In re Data General Corp. Antitrust Litigation*, 510 F.Supp. 1220, 1227–28 (J.P.M.L. 1979) (*quoting In re Air Crash Disaster at John F. Kennedy International Airport on June 24, 1975*, 407 F.Supp. 244, 246–47 (J.P.M.L.1976)); *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 732-735 (7th Cir. 2010); *In re Air Crash Disaster Near Chicago*, 644 F.2d 594, 610 (7th Cir. 1981).[4] Accordingly, in the instant case, the Court would apply California's "governmental interest" approach.[5] Because this

---

[4] This parallels the rules governing cases transferred pursuant to 28 U.S.C. § 1404(a). *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (transferee court must apply the choice of law rules of the State from which the case was transferred); *Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992) (noting that when a case is transferred on grounds of convenience, the transferee court must apply the conflict of laws rules of the transferor jurisdiction whether the defendant or the plaintiff requested the transfer).

[5] A district court sitting in California would apply California conflict of laws rules. *See Malone v. Corrections Corp. of Am.*, 553 F.3d 540, 542 (7th Cir. 2009) (A district court sitting in diversity applies the conflict of laws rules of the state in which it sits). California applies a "governmental interest" approach. *Reich v. Purcell*, 67 Cal.2d 551, 554–55, 63 Cal.Rptr. 31, 432 P.2d 727 (Cal. 1967). The objective of this approach is to determine the law that most appropriately applies to the issue involved, considering the interests of the litigants and all states involved. *Reich*, 67 Cal.2d at 555, 63 Cal.Rptr. 31, 432 P.2d 727. In the instant case, the following jurisdictions might

n/a

case involves multiple plaintiffs and numerous theories of recovery, the Court would have to apply an individualized choice of law analysis to each plaintiff and each claim to determine which jurisdiction's substantive law governs the same. *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1188 (9th Cir. 2001).[6]

### 2. Federal Law

With regard to questions of federal law, the Court is governed by the law of the Seventh Circuit. *See McMasters v. U.S.* 260 F.3d 814, 820 (7th Cir. 2001) (in general, the law of the circuit where the transferee court sits governs questions of federal law). [7] *See also Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1126 (7th Cir. 1993), cert. denied, 510 U.S. 1073, 114 S.Ct. 883, 127 L.Ed.2d 78 (1994) (law of the transferor forum is only applied when the federal law in question is intended to be geographically non-uniform).

---

have an interest in having their substantive laws applied: Louisiana (only with regard to the claims of the Louisiana citizens); Tennessee (only with regard to the claims of the Tennessee citizens); California (with regard to the claims of the California citizens and, as the forum, with regard to the claims of all plaintiffs). In addition, Delaware, Connecticut, Germany, and Italy are potentially interested jurisdictions.

[6] In the instant case, the plaintiffs assume California substantive law governs all of the plaintiffs' claims (presumably because the case was filed in California). But here, the law of the forum is not necessarily controlling. This is particularly true with respect to those plaintiffs who are citizens of (and were likely injured in) states other than California. *See e.g., Boaz v. Boyle & Co.*, 40 Cal. App. 4th 700, 713 (although the situs of the injury is not controlling, it remains a relevant consideration).

[7] Although the Seventh Circuit has yet to decide which law governs federal claims in cases transferred under 28 U.S.C. § 1407, it has adopted the above rationale when resolving the question under 28 U.S.C. § 1404(a), which authorizes district courts to transfer cases for reasons of convenience. *See McMasters v. U.S.*, 260 F.3d 814, 819 (7th Cir. 2001); *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1126 (7th Cir. 1993), cert. denied, 510 U.S. 1073, 114 S.Ct. 883, 127 L.Ed.2d 78 (1994).

### 3. District Court Decisions

The Court reminds the parties that district court opinions have no precedential value and are not binding on this court. *See, e.g.*, *Howard v. Wal–Mart Stores, Inc.*, 160 F.3d 358, 359 (7th Cir. 1998); *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 697 (7th Cir.1998) little or no authoritative value"). Further, the undersigned judge has specific case management procedures relating to citation of federal trial courts:

> When parties or attorneys feel compelled to cite other federal trial courts as authority for a particular proposition of law, despite the complete lack of precedential authority thereof, the name of the trial judge whose order is cited should be included with the citation. Furthermore, the exact purpose in citing the case should be included since it is presumed that it is not cited as binding precedent on this Court. If a subsequent Seventh Circuit opinion, for example, relies upon the case for a reason pertinent to the action at bar, this Court should be so advised.

Chief Judge David R. Herndon Case Management Procedures, p. 2 (available at http://www.ilsd.uscourts.gov/documents/Herndon.pdf).

### B. Alleged Procedural Deficiencies

#### 1. Timeliness of Removal

The plaintiffs contend that, because the notice of removal was filed prior to the plaintiffs effecting service on *any* of the defendants, it was premature and thus untimely (Doc. 14 p. 11). The Court is not persuaded by this argument. Section 1446(b)(1) merely establishes the deadline or outer limit for filing a notice of removal, after which removal is untimely. *See* 28 U.S.C. § 1446(b)(1)("The notice of removal of a civil action or proceeding *shall be filed within thirty days after*

6

*the receipt by the defendant, through service or otherwise*, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]") (emphasis added). Nothing in section 1446(b)(1), or any other statute,[8] indicates that a defendant must formally receive the complaint before removing the case. Given the statute's clarity, it is not the Court's place to impose any such requirement.[9]

2. Consent

The plaintiffs argue the removal was defective because BIPI did not obtain the consent of the other defendants (Doc. 14 p. 12). The plaintiffs are correct in noting that the judicially created "rule of unanimity" generally requires all defendants to consent to removal. *See Chicago, Rock Island & Pac. Ry. Co. v. Martin,* 178 U.S. 245, 248, 20 S.Ct. 854, 44 L.Ed. 1055 (1900). Federal courts, however, uniformly recognize that fraudulently joined defendants and unserved defendants are not required to join in the removal.[10]

---

[8] In fact, 28 U.S.C. § 1441 indicates that a complaint need only be filed to be removable. *See* 28 U.S.C. § 1441(a) ("any civil action *brought* in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants") (emphasis added). *See also* 28 U.S.C. § 1448 (diminishing the significance of pre-removal service by providing that service may be completed after removal in cases "in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective").

[9] The plaintiffs cite to a number of cases addressing the significance of service of process in evaluating whether diversity of citizenship exists (Doc. 14 pp. 11-12). These cases relate to the existence of diversity jurisdiction and are not applicable to the plaintiffs' timeliness arguments.

[10] *See e.g. Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir. 1993) (overruled on other grounds by *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006) (noting that a party's consent "was not needed" where it was not served until after the filing of the removal petition); *Id.* at 368 ("only indispensable defendants are required to join in the petition for removal; the consent of nominal or formal parties is not necessary"); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n. 1 (9th Cir.1988) (fraudulently joined, unknown, nominal, and unserved defendants need not consent); *Salveson v. W. States Bankcard Ass'n*, 731 F.2d 1423,

Here, none of the defendants had been served at the time of removal. Accordingly, BIPI did not need to obtain the consent of the other defendants. Moreover, for the reasons discussed below, the Court finds McKesson and BIF were fraudulently joined. As a result, BIPI did not need to obtain consent from McKesson or BIF.

### 3.  Forum Defendant Rule

a. The forum defendant rule does not apply to fraudulently joined defendants

The "forum defendant rule," contained in 28 U.S.C. § 1441(b)(2), provides that a case may not be removed on the basis of diversity jurisdiction where one or more defendants is a citizen of the state in which the action is pending. *See* 28 U.S.C. § 1441(b)(2). In the instant case, the plaintiffs claim the forum defendant rule bars removal because BIF and McKesson are citizens of California, the state in which the action was brought (Doc. 28 pp. 5-7).

BIPI asserts the forum defendant rule is inapplicable because BIF and McKesson were fraudulently joined. The Court agrees. Section 1441(b)(2) provides that an action otherwise removable on diversity grounds "may not be removed if any of the parties in interest *properly* joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added).  Thus, pursuant to the plain language of the statute, removal is only prohibited when a *properly* joined and served resident defendant is present.

---

1429 (9th Cir. 1984), superseded by statute on unrelated grounds, as noted in *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1392 n. 3 (9th Cir. 1988) ("Our circuit rule is that a party not served need not be joined.").

8

A defendant that has been fraudulently joined to defeat diversity jurisdiction does not meet this requirement.[11] In the instant case, for the reasons discussed below, the Court finds that BIF and McKesson were fraudulently joined. As a result, the forum defendant rule is not applicable.

> b. The requirement of complete diversity must be distinguished from the requirements of removability

The forum defendant rule is not applicable because BIF and McKesson were fraudulently joined. Accordingly, the Court need not resolve the parties' arguments with regard to service of process and the forum defendant rule. Nonetheless, the Court will take a moment to clarify an area of confusion that is evident from the plaintiffs' briefing.

BIPI contends that, even if the forum defendant rule were applicable, the presence of an unserved resident defendant would not bar removal. The plaintiffs insist that service is not a relevant consideration in assessing the propriety of removal under the forum defendant rule.[12] As support for their argument, the plaintiffs rely on a number of decisions in which the defendants attempted to use lack of service as an exception to the requirement of complete *diversity*.[13]

---

[11] This holding is consistent with a fundamental principle of fraudulent joinder, namely that a defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921).

[12] In fact, the plaintiffs claim that BIPI's interpretation of the forum defendant rule constitutes a "blatant misreading of the statute" that has been rejected by "9th Circuit Courts and courts nationwide as improper gamesmanship by the defense bar" (Doc. 28 p. 5).

[13] (*See* Doc. 14 pp. 11-12) (*citing Jennings-Frey v. NYK Logistics Americas Inc.*, No. 2:10-cv-09737, 2011 WL 642653 (C.D. Cal. Feb. 11, 2011) (not reported) (Nguyen, J) (rejecting argument that citizenship of nondiverse defendant should be disregarded in determining *complete diversity*

Reliance on these decisions demonstrates the plaintiffs are conflating section 1332's *diversity* requirement with the requirements of *removability* under the forum defendant rule. This is problematic because there is a crucial distinction between what is relevant in ascertaining diversity (a jurisdictional question) and what is relevant in ascertaining removability under section 1441(b)(2) (a procedural question). [14]

Section 1332 provides a basis for original subject matter jurisdiction over actions between citizens of different states when the sum or value of the matter in controversy exceeds $ 75,000. 28 U.S.C. § 1332(a). The statute requires complete diversity, meaning "none of the parties on either side of the litigation may be a citizen of a state of which a party on the other side is a citizen." *Howell by Goerdt v. Tribune Entertainment Co.,* 106 F.3d 215, 217 (7th Cir. 1997). If complete diversity exists, there is a jurisdictional basis for removal under 28 U.S.C. § 1441(a).

There is no question that the citizenship of all named defendants,[15] regardless of service, must be considered in determining whether diversity

---

because nondiverse defendant was not served at the time of removal); *Preasesu v. Prudential Ins. Co.*, 591 F.2d 74, 78 (9th Cir. 1979) (holding that the "properly joined and served" language in section 1441(b) does not alter the requirement of complete diversity and concluding that service is immaterial in assessing diversity); *Pecherski v. Gen. Motors Corp.,* 636 F.2d 1156, 1161 (8th Cir. 1981) (holding that section 1441(b) did not expand the removal requirement and stating that in assessing diversity jurisdiction a court "must consider all named defendants, regardless of service.")

[14] *Holmstrom v. Peterson*, 492 F.3d 833, 838 (7th Cir.2007) (the forum defendant rule is not jurisdictional; it is a procedural impediment to removal).

[15] There are of course exceptions to this general rule. Relevant to the instant case is the doctrine of fraudulent joinder which allows a court to disregard the citizenship of any defendants that have

jurisdiction exists.[16] However, the forum defendant rule is a separate, non-jurisdictional inquiry with its own statutory requirements. The vast majority of courts considering those statutory requirements have concluded that, where diversity jurisdiction exists, the presence of an unserved forum defendant does not bar removal.[17] As the undersigned judge has explained in previous decisions:

> nothing in 28 U.S.C. § 1441 [bars] removal in diversity cases when an unserved resident defendant is present. In fact, just the opposite: as that statute's language clearly provides, if diversity jurisdiction exists, only a "joined *and served*" resident prevents ... removal. Under the statute's plain language, therefore, if a resident defendant is not both joined and served, the forum defendant rule does not apply.

*Massey v. Cassens & Sons, Inc.,* 05-0598-DRH (Feb. 16, 2006 Doc. 58 pp. 5-7) (Herndon, C.J.) (citations removed) (emphasis supplied). *See also Sheffer v. Cottrell, Inc., et al.,* 2009 WL 1231037, *2-*3 (S.D. Ill. Apr. 30, 2009) (Herndon, C.J.).[18]

---

been fraudulently joined. *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 763 (7th Cir. 2009).

[16] *See e.g., Pullman Co. v. Jenkins,* 305 U.S. 534, 59 S. Ct. 347, 83 L. Ed. 334 (1939) (diversity jurisdiction is determined by the citizenship of the parties, regardless of service of process); *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 883 (5th Cir. 1998) ("Whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service."); *Howell by Goerdt v. Tribune Entertainment Co.,* 106 F.3d 215, 217 (7th Cir. 1997) (rejecting contention that, in assessing diversity, court could ignore the citizenship of an unserved defendant); see also 14B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 3723 (4th ed. 2012) ("A party whose presence in the action would destroy diversity must be dropped formally, as a matter of record, to permit removal to federal court. It is insufficient, for example, that service of process simply has not been made on a non-diverse party[.]").

[17] *See e.g., McCall v. Scott,* 239 F.3d 808, 813 n. 2 (6th Cir.2001) ("Where there is complete diversity of citizenship, ... the inclusion of an unserved resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b)."); *see also* 14B C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure § 3723, at 341 (4th ed. 2012) (the "joined and served" language found in section 1441(b)(2) implies that, in diversity actions, "a diverse but resident defendant who has not been served may be ignored in determining removability."

[18] Some courts have carved out a limited exception to the rule that, in diversity cases, section 1441(b)(2) does not bar removal of actions involving an unserved resident defendant. For

Therefore, the forum defendant rule does not bar removal when an unserved resident defendant is present. Moreover, although diversity of citizenship is assessed without regard to service of process, this rule is not applicable in the instant case. Here, BIPI does not contend diversity exists because of lack of service. Rather, BIPI contends diversity exists because the forum defendants were fraudulently joined. Accordingly, the plaintiffs' extensive argumentation regarding service of process and the existence of diversity jurisdiction is not relevant.

C.  Fraudulent Joinder

    1.  Legal Standard

The doctrine of fraudulent joinder is an exception to section 1332's complete diversity requirement. *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). Pursuant to the fraudulent joinder doctrine, a district court considering removal may "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 763 (7th Cir. 2009). The doctrine of fraudulent joinder is triggered when a defendant demonstrates that, "after resolving all issues

---

instance, in *Holmstrom v. Harad*, 2005 WL 1950672 (N.D. Ill. Aug. 11, 2005) (Aspen, J.) (relied on by the plaintiffs), the court found that while the presence of an unserved resident defendant normally does not defeat removal, that fact, when coupled with the fact that the removing defendant had not been served, was sufficient to warrant remand. *Holmstrom*, 2005 U.S. Dist. Lexis 16694, at *3-8. The undersigned judge has previously declined to adopt this exception finding it contrary to the plain language of the statute. *See Massey v. Cassens & Sons, Inc.*, 05-0598-DRH (Feb. 16, 2006 Doc. 58 pp. 5-7) (Herndon, C.J.) ("where complete diversity is present…only the presence of a 'joined-and-served' resident defendant defeats removal…The statute contains no proviso, and, given its clarity, it is not the Court's role to insert one.").

of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992); accord, *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir. 2009). Put another way, fraudulent joinder exists when a non-diverse defendant is "joined simply to defeat removal, as might be inferred from a demonstration that the claim against that defendant had no possible merit." *Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011).

Generally, an evaluation of fraudulent joinder is limited to a review of the allegations in the complaint. However, the Seventh Circuit has held that courts may engage in the limited use of affidavits and similar evidence in assessing relevant jurisdictional facts. *See Faucett v. Ingersoll–Rand Mining & Machinery Co.*, 960 F.2d 653, 655 (7th Cir. 1992). For example, in *Faucett*, the Seventh Circuit held a non-diverse defendant's uncontradicted affidavit, stating the defendant had nothing to do with the allegedly injurious product, established there was no possibility the plaintiff could state a claim against the non-diverse defendant. *Faucett,* 960 F.2d at 654-655.

### 2. Causation is a requisite element of the plaintiffs' claims

The gravamen of the plaintiffs' claims is that, as a result of the ingestion of Pradaxa, each plaintiff suffered various physical, economic and emotional injuries (Doc. 1-1 ¶¶ 11-18). Imposition of liability, under any of the plaintiffs' asserted theories of recovery, will require some causal relationship between the defendant's conduct and the plaintiffs' alleged injuries – regardless of which

13

jurisdiction's substantive law governs the individual claims of each plaintiff.[19]

This concept is aptly described in an ALR annotation on products liability:

> Regardless of the theory which liability is predicated upon, whether negligence, breach of warranty, strict liability in tort, or other grounds, it is obvious that to hold a producer, manufacturer, or seller liable for injury caused by a particular product, there must first be proof that the defendant produced, manufactured, sold, or was in some way responsible for the product.

Products Liability: Necessity and Sufficiency of Identification of Defendant as Manufacturer or Seller of Product Alleged to Have Caused Injury, 51 A.L.R.3d 1344, § 2(a) (footnotes omitted). Thus, in the instant case, absent an allegation that BIF or McKesson was in some way responsible for the allegedly injurious product, the plaintiffs' claims have no chance of success.

---

[19] Regardless of which jurisdiction's substantive law governs, the plaintiffs must, at a minimum, establish the particular defendant was in some way responsible for the particular product that allegedly harmed the plaintiffs. *See e.g., DiCola v. White Bros. Performance Products, Inc.,* 158 Cal.App. 4th 666, 677, 69 Cal.Rptr.3d 888, 898 (Cal. App. 2008) ("As a general rule, a plaintiff claiming to have been injured by a defective product must prove that the defendant's product, or some instrumentality under the defendant's control, caused his or her injury."); *Sindell v. Abbott Laboratories,* 26 Cal.3d 588, 597–598, 607 P.2d 924, 928, 163 Cal.Rptr. 132, 136 (Cal. 1980) ("as a general rule, the imposition of liability depends upon a showing by the plaintiff that his or her injuries were caused by the act of the defendant or by an instrumentality under the defendant's control.") (internal citations omitted); *Desnoyers v. Wells,* 496 A.2d 237 (Conn. App. 1985) (summary judgment in favor of defendant appropriate where evidence showed that defendant did not manufacture, sell or distribute the allegedly injurious product); *In re Asbestos Litigation,* 911 A.2d 1176, 1208 (Del. Super. 2006) (imposition of liability requires connection between defendant's product and plaintiff's injury); *Aymond v. Texaco, Inc*., 554 F.2d 206, (C.A. La. 1977) (affirming lower court's directed verdict in favor of manufacturer and noting that manufacturer could not be held liable for worker's injuries where there was no evidence that defective product was manufactured by defendant); *Davis v. Yearwood*, 612 S.W.2d 917 (Tenn. App. 1980) (complaint against all possible manufacturers, sellers, distributors, and the like of all possible products that could have caused plaintiffs' injuries, wherein no specific product or entity was identified, court affirmed dismissal for failure to allege facts showing the moving defendant caused or contributed to plaintiffs' injuries). *See also* Products Liability: Necessity and Sufficiency of Identification of Defendant as Manufacturer or Seller of Product Alleged to Have Caused Injury, 51 A.L.R.3d 1344, § 2(a) (collecting cases).

### 3.  Boilerplate Allegations are not Sufficient

The first paragraph of the plaintiffs' complaint alleges that Pradaxa is "a pharmaceutical product researched, designed formulated, compounded, tested, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed or otherwise placed in the stream of interstate commerce by [all of the named defendants]" (Doc. 1-1 ¶ 1). These generic allegations as to all of the defendants do not establish that McKesson or BIF was, in any way, responsible for the product that allegedly caused the plaintiffs' injuries. The undersigned judge has addressed the inadequacies of such boilerplate allegations on numerous occasions. *See In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2100, 2011 WL 1885408 (S.D. Ill. May 17, 2011) (Herndon, C.J.); *In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2100, 2010 WL 3937414 (S.D. Ill. Oct. 4, 2010) (Herndon, C.J.); *In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2100, 2010 WL 2402926 (S.D. Ill. June 15, 2010) (Herndon, C.J.); *In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2100, 2010 WL 1963202 (S.D. Ill. May 14, 2010) (Herndon, C.J.).

4. Fraudulent joinder as to BIF

Aside from the generic allegations discussed above, the plaintiffs do not allege that BIF manufactured, sold, distributed, or was in any way responsible for the allegedly injurious product. The only specific allegations with regard to BIF are that BIF is California Corporation with its principal place of business in California and that BIF has "conducted business and derived substantial revenue from within the State of California." (Doc. 1-1 ¶ 22). Additionally, BIPI has submitted the declaration of Ralf Otto, the Vice President, Operations and Site Head for BIF (Doc. 1-2). In his affidavit, Mr. Otto asserts as follows:

> 5. [BIF] specializes in the development and manufacturing of biopharmaceuticals, including the development of new biological entities for the treatment of human diseases.
>
> 6. [BIF] does not design, develop, manufacture, distribute, market, label or sell the drug [Pradaxa].
>
> 7. [BIF] is a corporation wholly separate and distinct from [BIPI], and [BIF] is not a parent or subsidiary of BIPI.

(Doc. 1-2 ¶¶ 5-7). Other than referencing their boilerplate allegations, the plaintiffs do not dispute any of the statements in Mr. Otto's affidavit.

Based on the allegations in the complaint and the uncontroverted statements in Mr. Otto's affidavit, it is evident that the plaintiffs cannot establish that BIF was in any way connected to the allegedly injurious product. Accordingly, the plaintiffs's claims against BIF have no chance of success in state court.

16

### 5. Fraudulent joinder as to McKesson

McKesson is a wholesale distributor of prescription medications that purchases pharmaceuticals for sale to retail pharmacies. The only specific allegations with regard to McKesson are as follows: (1) McKesson is "a pharmaceutical distribution and marketing company organized and existing under the laws of the State of Delaware, with its headquarters [in California]" and (2) McKesson "was in the business of promoting and distributing the pharmaceutical product Pradaxa" (Doc. 1-1 ¶¶ 27-28).

The plaintiffs do not allege that McKesson distributed or supplied the Pradaxa that caused their alleged injuries. As the undersigned judge has explained in other decisions, alleging that McKesson is *a* distributor of Pradaxa is not the same as alleging that McKesson is *the* distributor that supplied the pills ingested by the plaintiffs. *See e.g., In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2100, 2011 WL 1885408 (S.D. Ill. May 17, 2011) (Herndon, C.J.). Absent such an allegation, there is absolutely no causal link between McKesson and the allegedly injurious product. Accordingly, the Court finds that the plaintiffs' claims as to McKesson have no chance of success under state law.

### D. Fraudulent Joinder Warrants Dismissal of BIF and McKesson

Resolving all issues of fact and law in favor of the plaintiffs, the Court concludes that the plaintiffs have no chance of establishing a cause of action against McKesson or BIF under substantive state law. Accordingly, the Court

17

concludes that BIF and McKesson have been fraudulently joined. The Court's fraudulent joinder finding warrants dismissal of the fraudulently joined defendants. *See Walton v. Bayer Corp.,* 643 F.3d 994, 999-1001 (7th Cir. 2011) (finding of fraudulent joinder is ground for dismissing defendant from lawsuit).

The Court therefore **DISMISSES** McKessson and BIF.

E.  Remand is Denied

In light of the Court's finding that the plaintiff cannot sustain a claim against the nondiverse defendants, there is now complete diversity. The second requirement for jurisdiction is that the amount in controversy must exceed $75,000. The plaintiffs contend that, because the amount in controversy is not expressly alleged, it is "unclear how Defendants can properly allege or establish this crucial element of diversity jurisdiction" (Doc. 14 p. 11 n.1). The Court is not persuaded.

The plaintiffs claim that they suffered "physical, economic and emotional injuries" including the following:

> Plaintiff Thelma Butner:  "gastrointestinal bleeding and bleeding ulcers, resulting in the need for four pints of blood and two pints of blood plasma, as well as other permanent injuries, such as general physical weakness and reduction in vision." (Doc. 1-1 ¶ 11)
>
> Plaintiff Clifton Fitzsimmons:  "cerebral and gastrointestinal bleeding, resulting in the need for six pints of blood and one pint of blood plasma." (Doc. 1-1 ¶ 13)
>
> Plaintiff John Wilchinski:  "cerebral bleeding and stroke, resulting in permanent long term injuries and the removal of his right foot." (Doc. 1-1 ¶ 15).

Plaintiff George Fletcher: "gastrointestinal bleeding, resulting in the need for fourteen pints of blood and removal of his lower intestine." (Doc. 1-1 ¶ 17)

Plaintiff Pauline B. Aldridge: "gastrointestinal bleeding and bleeding ulcers, resulting in serious long term injuries." (Doc. 1-1 ¶ 18)

These alleged injuries make it abundantly clear that the plaintiffs are seeking damages in excess of $75,000. *See Walton v. Bayer Corp.*, 643 F.3d 994, 998 (7th Cir. 2011).

Therefore, the Court **FINDS** that it has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and the plaintiffs' motion to remand is **DENIED**.

## IV. CONCLUSION

For the reasons discussed above, the Court **FINDS** and **ORDERS** as follows:

The nondiverse defendants, Boehringer Ingelheim Fremont, Inc. and McKesson Corporation, were fraudulently joined. Accordingly, Boehringer Ingelheim Fremont, Inc. and McKesson Corporation are **DISMISSED**.

The removal was procedurally proper. Additionally, the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 (the amount in controversy is met and,

in light of the dismissal of the nondiverse defendants, complete diversity exists).

Therefore, the plaintiffs' motion to remand is **DENIED**.

**IT IS SO ORDERED.**

Digitally signed by David R. Herndon
Date: 2013.02.22 15:53:10 -06'00'

**Chief Judge**  Date: February 22, 2013
**United States District Court**